[No. D015692. Fourth Dist., Div. One. Apr. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY JACKSON, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

**COUNSEL**

Michon Marie Hinz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Janelle B. Davis and Barry J.T. Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WORK, J.**—Anthony Jackson appeals a judgment convicting him of possessing cocaine base (Health & Saf. Code, § 11350, subd. (a)), being a felon in possession of a firearm (Pen. Code,[1] § 12021, subd. (a)), and giving false identification to a peace officer (§ 148.9, subd. (a)). He contends the court erred in precluding an exculpatory written statement by Olivia Johnson against her penal interests, taken by an investigator and first proffered after the People rested. He asserts the preclusion violated sections 1054.3 and 1054.5, as well as his right to offer testimony under the Sixth and Fourteenth Amendments. Jackson claims he did not intend to use the statement or call the witness until moments before he announced it, therefore the People were not entitled to the statement or the name of the witness. He also contends the prosecution waived its right to discovery and, in any event, was not entitled to sanctions because it did not fully comply with discovery procedures.[2] Jackson also asserts the trial court abused its discretion by not exhausting other sanctions before excluding evidence. He finally contends the trial court committed reversible error by failing to state reasons for imposing consecutive sentences and not determining a stay was required on some counts.

We conclude the trial court did not abuse its discretion in precluding the testimony; moreover no constitutional violations occurred by not admitting the evidence. Further, the failure to state reasons for sentencing consecutively was harmless. Accordingly, we affirm the judgment.

### Factual and Procedural Background

Jackson was taken into custody by Officer William Stetson during a narcotics investigation. Jackson told Stetson his name was Tim Robinson and persisted until Stetson convinced him to tell the truth. Jackson then told Stetson his real name and that he lived at 4050 Parkhaven, apartment G, with his girlfriend, Nina Rivers. Stetson took Jackson to the apartment to conduct a search, which revealed a loaded assault rifle, 223 rounds of ammunition, and a package containing 7 rocks of cocaine.[3] A safe to which Jackson knew the combination was also discovered. No pagers, owe sheets or significant amounts of money were found. Rivers, Olivia Johnson, Travis Turner, and a baby, all living at the apartment, were present during the search.

At trial, after the People rested, Jackson's counsel attempted to introduce evidence of an allegedly exculpatory statement by Johnson taken by an

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] The late discovery was a report showing no fingerprints on the gun.

[3] A mayonnaise jar with white residue, a plate with white residue and a razor blade were found in the kitchen. Stetson recognized these as items for rock cocaine production. None of these items were fingerprinted.

investigator which he had not given to the prosecution despite having known of it for three months.[4] The court granted the People's motion to preclude the statement, because no other sanctions would suffice.

The court allowed Rivers to testify she heard Johnson tell Jackson's counsel the drugs and gun belonged to her. Rivers did not know Johnson's whereabouts. She testified she never saw Jackson handle the gun, nor did he have drugs in the house. However, she did see Johnson handle the gun. The testimony was in conflict regarding where Jackson lived. His mother said he was living with her, spending time with Rivers on weekends. Rivers testified she only dated Jackson several times, denying telling the police he was living with her. Stetson testified Rivers told him Jackson had been living with her for the past three months.

I

*Formal Requests to Compel Discovery Are Not Required Before Sanctions May Be Imposed*

■ The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. (*Hobbs v. Municipal Court* (1991) 233 Cal.App.3d 670, 686 [284 Cal.Rptr. 655].) Reciprocal discovery is intended to protect the public interest in a full and truthful disclosure of critical facts, to promote the People's interest in preventing a last minute defense, and to reduce the risk of judgments based on incomplete testimony. (*Id.* at p. 686.)

■ Thirty days before trial, the defense shall disclose: "The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons . . . ." (§ 1054.3, subd. (a).) The phrase "intends to call" includes "all witnesses it reasonably anticipates it is likely to call . . . ." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 375 [285 Cal.Rptr. 231, 815 P.2d 304], quoting *State v. Howard* (1978) 56 Ohio.St.2d 328 [10 Ohio.Ops.3d 448, 383 N.E.2d 912, 915].)

"Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the

---

[4]An exception to the hearsay rule is a statement made against interest when the declarant is unavailable may be admissible. (Evid. Code, § 1230.)

opposing counsel fails to provide the materials and information requested, the party may seek a court order. Upon a showing that a party has not complied with Section 1054.1 or 1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. . . ." (§ 1054.5, subd. (b).)

■ Here, although the prosecution complied with the informal discovery procedure, it never received a written report of Johnson's statement to the investigator. Jackson unpersuasively contends the prosecutor was obligated to bring a motion to compel discovery before sanctions could be imposed, and that by not bringing a motion to compel it waived its right to the evidence and the protection of sanctions. The plain language of the statute requires informal discovery procedures be complied with before sanctions may be imposed, whereas filing a motion to compel is optional. If filing a motion to compel were mandatory before sanctions could be imposed, nothing would prevent parties from withholding critical evidence despite being requested through informal procedures to disclose the information. A party would have nothing to lose by concealing a key witness until a formal motion to compel is brought, yet opposing counsel would not know to bring a formal motion because he or she would have no way of knowing the informal request was not complied with. Thus, parties would always have to bring formal requests to compel discovery to prevent surprise testimony at the trial. This would result in the very mischief the statute was designed to prevent. Requiring informal discovery, which is intended to save court time from judicial enforcement (§ 1054, subd. (b)), would have little impact if parties were required to bring a formal motion to compel before every trial.

Jackson also contends sanctions can only be imposed when the moving party has fully complied with informal discovery. Here, he argues because the prosecutor was late in providing exculpatory evidence, she should not be allowed to seek sanctions. The intent of section 1054.5, subdivision (b) is for a moving party to utilize informal procedures before resorting to court enforcement and not to punish the moving party who itself has not complied with each discovery provision. Here, the prosecution's belated disclosure was harmless, because the evidence was not inculpatory.[5] Under the circumstances, punishing the prosecutor for this minor infraction by denying her any remedy is unwarranted.

---

[5]The late report was an examination of the gun which yielded no usable fingerprints.

## II

### *The Trial Court Did Not Abuse Its Discretion in Precluding the Statement as a Sanction*

■ "The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted." (§ 1054.5, subd. (c).) Although alternative sanctions are available, in some instances they would perpetuate "prejudice to the State and . . . harm to the adversary process." (*Taylor* v. *Illinois* (1988) 484 U.S. 400, 413 [98 L.Ed.2d 798, 813, 108 S.Ct. 646].) If an omission is willful in hope of obtaining a tactical advantage, the court may exclude the witness's testimony. (*Id.* at p. 415 [98 L.Ed.2d at pp. 814-815].) It is not unreasonable to suspect testimony from "a defense witness who is not identified until after the 11th hour has passed." (*Id.* at p. 414 [98 L.Ed.2d at pp. 813-814].) Here, because the testimony was allegedly exculpatory, the trial court refused to believe defense counsel did not seriously consider calling the witness until moments before he did. Even if withholding the identity of the witness were not willful, lesser sanctions would not have been adequate. Immediate disclosure or contempt of counsel would have been insufficient, because the People would not have had a meaningful opportunity to rebut or impeach the statement. Similarly, a continuance would have been inadequate, because the declarant's whereabouts were unknown and thus her unavailability precluded the People from cross-examining her. The People would have been unduly prejudiced by admitting the testimony without an opportunity for cross-examination, and the integrity of the adversary process would have been compromised as parties with little to lose would be encouraged to not comply with pretrial discovery rules. The court did not abuse its discretion in precluding the testimony.

## III

### *The Compulsory Process Clause of the Sixth Amendment Is Not an Absolute Bar to Precluding Testimony of a Surprise Witness*

■ The right to present exculpatory evidence has limitations. (*Taylor* v. *Illinois, supra,* 484 U.S. at p. 410 [98 L.Ed.2d at p. 811].) Rules of procedure governing the organized presentation of facts and allowing parties the opportunity to contradict or explain the opponent's case must be adhered to. (*Id.* at p. 411 [98 L.Ed.2d at pp. 811-812].)

"The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke

the Sixth Amendment as a justification for presenting what might have been a half-truth." (484 U.S. at pp. 412-413 [98 L.Ed.2d at pp. 812-813], quoting *United States* v. *Nobles* (1975) 422 U.S. 225, 241 [45 L.Ed.2d 141, 155, 95 S.Ct. 2160].) Jackson unpersuasively maintains his constitutional right to compulsory process was denied by precluding exculpatory testimony. He had the alleged exculpatory statement months before the trial. Rather than comply with reciprocal discovery rules by giving the People the name of the witness and the proposed testimony, he chose to surprise the People with the statement at trial. Admitting such potentially unreliable evidence untested by cross-examination would have not only prejudiced the People's case, but also undermined the discovery process. Jackson cannot disregard the rules of procedure, then later claim an absolute right to present surprise testimony. He was not denied his constitutional right to compulsory process and due process.

## IV

### *Failing to State Reasons for Imposing Consecutive Sentences Was Harmless\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

Judgment affirmed.

Kremer, P. J., concurred. Huffman, J., concurred in the result.

Appellant's petition for review by the Supreme Court was denied July 14, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1197.